1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11  CELECIA GRAHAM,                    )    NO. CV 09-06046-SS
                                       )
12             Plaintiff,              )
                                       )
13        v.                           )    **MEMORANDUM DECISION AND ORDER**
                                       )
14  MICHAEL J. ASTRUE,                 )
    Commissioner of the Social         )
15  Security Administration,           )
                                       )
16             Defendant.              )
    _____)

17

18        Plaintiff Celecia Graham ("Plaintiff") brings this action seeking
19  to overturn the decision of the Commissioner of the Social Security
20  Administration (hereinafter "Defendant," "Commissioner," or the
21  "Agency") denying her application for a period of disability, disability
22  insurance benefits and Supplemental Security Income ("SSI") benefits.
23  Alternatively, she asks for a remand.  The parties consented, pursuant
24  to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United
25  States Magistrate Judge.  The parties filed a Joint Stipulation ("JS"),
26  pursuant to this Court's Case Management Order, in support of their
27  respective positions.  For the reasons stated below, the decision of the
28  Commissioner is AFFIRMED.

**PROCEDURAL HISTORY**

On August 19, 2003, Plaintiff filed an application for a period of disability, disability insurance benefits and SSI benefits, alleging asthma and sarcoidosis as the bases for her disability. (Administrative Record ("AR") 166-67). Plaintiff alleged a disability onset date of April 1, 2003. (AR 167). On December 2, 2004, Administrative Law Judge ("ALJ") Stanley R. Hogg denied the application finding that there were "a significant number of jobs" Plaintiff could perform with her residual functional capacity ("RFC") and limitations. (AR 172-73). This decision became the final decision of the Commissioner.

On April 18, 2005, Plaintiff filed the current application for a period of disability, disability insurance benefits and SSI benefits on the basis of sarcoidosis.[1] (AR 183-91, 202). Plaintiff alleged a disability onset date of April 1, 2003. (AR 202, 215). The Agency denied Plaintiff's initial application for benefits. (AR 176). Upon Plaintiff's request, on August 29, 2006, ALJ Dale A. Garwal conducted a hearing at which Plaintiff appeared with counsel and testified. (AR 348-66). A vocational expert also testified. (AR 362-65). ALJ Garwal issued a decision denying benefits on October 26, 2006. (AR 16-22). Plaintiff filed a Request for Review of the Hearing Decision, which was denied. (AR 8). As such, the ALJ's decision became the final decision of the Commissioner.

---

[1]  Although Plaintiff's applications for a period of disability, disability insurance benefits and SSI benefits are dated June 8, 2005, the protective filing date is April 18, 2005. (AR 183-91, 211).

2

Plaintiff initiated proceedings in the United States District Court, Central District of California to appeal the October 26, 2006 decision. (AR 371). On July 1, 2008, this Court reversed the Agency's decision on the basis that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's subjective pain testimony. (AR 413-17). This Court remanded the matter for further proceedings consistent with its decision. (AR 417).

On January 26, 2009, the ALJ conducted another hearing at which Plaintiff appeared with counsel and testified. (AR 383-95). On March 17, 2009, Plaintiff submitted additional medical records as evidence. (AR 371, 491-518). On June 15, 2009, the ALJ issued a decision, again denying benefits. (AR 370-80). This decision became the final decision of the Commissioner. On August 20, 2009, Plaintiff commenced the instant action.

**FACTUAL BACKGROUND**

**A.    Plaintiff's Medical History**

Plaintiff was born on December 20, 1958 and was fifty (50) at the time of the January 2009 hearing. (AR 183). Plaintiff completed two years of college. (AR 218). Her past work experience includes employment as a secretary and care provider. (AR 215). Plaintiff stopped working in 2003. (AR 215, 350).

Plaintiff's medical history consists of treatment records from the Martin Luther King/Drew Medical Center ("King/Drew Medical Center" or

1   "Hospital"), where she sought treatment at its clinics and emergency
2   room.  (AR 106-57, 249-88, 307-18, 494-518).  Plaintiff's medical
3   records also reflect one visit to Harbor-UCLA Medical Center. (491-92).
4   The medical records reference treatment for symptoms related to asthma
5   and sarcoidosis, including shortness of breath and joint pain.  (See,
6   e.g., AR 253, 260, 517).

7

8       Plaintiff sought treatment at King/Drew Medical Center dating back
9   to 2003.  (AR 148).  On April 22, 2003, Plaintiff went to the emergency
10  room at King/Drew Medical Center after experiencing shortness of breath
11  for several weeks.  (AR 132, 148-49).  King/Drew Medical Center admitted
12  Plaintiff and conducted a series of tests.  (AR  150).  A chest CAT
13  scant ("CT")revealed patchy areas of ground-glass opacities throughout
14  both lungs, mild mediastinal and hilar lymphadenopathy, and no evidence
15  of a pulmonary embolus.  (AR 152).  The physicians diagnosed her with
16  acute bronchiolitis with right hilar prominence.  (AR 140).  King/Drew
17  Medical Center discharged Plaintiff with instructions to take her asthma
18  medication and Tylenol and follow up at the pulmonary medicine division.
19  (AR 130).  A pulmonary function test at the pulmonary medicine division
20  revealed that Plaintiff had a "mild partially reversible obstructive
21  ventilatory defect."  (AR 127).

22

23      On May 31, 2003, Plaintiff again went to the King/Drew Medical
24  Center emergency room complaining of shortness of breath.  (AR 121).
25  The physicians diagnosed her with asthma exacerbation and advised her to
26  take her medication.  (AR 117).  The records show that Plaintiff stated
27  that she had pulmonary sarcoidosis.  (AR 119, 121).  Plaintiff returned
28  to the Hospital two days later for a follow up visit, during which time

1  the doctor noted that Plaintiff had not filled her prior prescription.
2  (AR 116).

3

4      On July 11, 2003, the Hospital conducted a Gallium Infection Survey
5  on Plaintiff to determine whether she had sarcoidosis.  (AR 109).  The
6  test, however, showed "no evidence of active infection or inflammation."
7  (Id.).  Medical records from August 6, 2003, however, state "sarcoidosis
8  recently [diagnosed]" and physicians ordered another "CT chest" due to
9  the impression of sarcoidosis.  (AR 107).  The physicians also
10 recommended a biopsy, but Plaintiff refused the procedure.  (Id.).

11

12     From 2004-2008, Plaintiff continued to seek treatment at King/Drew
13 Medical Center.  In 2004, Plaintiff primarily sought treatment for
14 chronic pansinusitis.  (See, e.g., AR 259, 262).  On several occasions,
15 Plaintiff reported pain.  (See.,e.g, AR 265-66).  The physicians
16 prescribed Tylenol for the pain.  (AR 263).  From 2005-2008, Plaintiff
17 continued to seek treatment for her asthma and sarcoidosis.  (See, e.g.,
18 AR 307, 315, 497, 504).  The records indicate that Plaintiff reported
19 joint pain on multiple occasions.  (See., e.g., AR 307, 315, 497).
20 Although Plaintiff reported joint pain, on January 23, 2006, x-rays of
21 Plaintiff's right hand and right knee were normal, she had full range of
22 motion on her joints, and there was no finding of tenderness.  (AR 498).
23 On August 1, 2007, the records indicate Plaintiff had no joint
24 inflamation, swelling or redness.  (AR 517).  The physicians prescribed
25 Tylenol, Motrin and Naproxen to treat the pain.  (See AR 311, 497, 517).

26

27

28

On several occasions, King/Drew Medical Center physicians referred Plaintiff to the rheumatology clinic for her pain. (AR 307, 312, 518). However, the records reflect only **one** visit to a rheumatology clinic. On August 15, 2006, Plaintiff sought treatment at the UCLA Arthritis Clinic at Harbor-UCLA Medical Center ("UCLA"). (AR 491-92). Plaintiff reported joint pain in her hands, knuckles, top of her feet, toes and knee. (AR 491). Plaintiff also reported swelling and redness three to four times a month. (Id.). Plaintiff told the UCLA physician that she took Motrin four times a day "which helps." (Id.). There is no evidence in the record that Plaintiff sought any additional treatment at UCLA or any other rheumatology clinic. On at least one occasion, Plaintiff made an appointment at a rheumatology clinic but did not show up. (AR 517).

**B.   Consultative Examinations**

Plaintiff underwent two internal medicine consultative examinations over the course of her two applications for benefits. (AR 84-89, 290-95). On October 20, 2003, Dr. Ursula E. Taylor conducted a consultative examination of Plaintiff. (AR 84-89). Dr. Taylor noted that Plaintiff's pulmonary function test showed a "mild obstruction with some response to bronchodilator," and coarse inspiratory and expiratory rhonchi, but that Plaintiff had "[n]o significant wheezing or rubs." (AR 86, 88). Plaintiff's grip strength was "5-5-5 lbs." for her right hand and "60-70-60 lbs." for her left hand. (AR 85). Dr. Taylor noted that there was "no evidence of deformities or swelling, but there was significant tenderness to movement of the right wrist and the fingers of the right hand." (AR 86). Dr. Taylor noted that there were no

1  significant deformities, swelling or tenderness of any other joint and
2  that Plaintiff's "ranges of motion of all extremities appear normal."
3  (Id.).  Dr. Taylor concluded that Plaintiff, with certain environmental
4  limitations, can push, pull, lift and carry twenty pounds occasionally
5  and ten pounds frequently, can stand and walk for six hours out of an
6  eight-hour day with normal breaks, and had no restrictions with regard
7  to sitting or activities requiring agility.  (AR 88).  Dr. Taylor placed
8  no restrictions on Plaintiff's use of her left hand but limited her fine
9  and gross manipulation of her right hand to occasionally.  (Id.).

11      On September 22, 2005, Dr. Brian To performed a consultative
12  examination of Plaintiff.  (AR 290-95).  Dr. To noted that Plaintiff had
13  "normal excursions without appreciable rhonchi or rubs," but "evidence
14  of decreased air entry bilaterally with bilateral expiratory wheezes and
15  some basilar crackles."  (AR 292).  Plaintiff's grip strength was "5, 5,
16  5 lbs." for each hand, but Dr. To concluded that Plaintiff "put forth
17  poor effort on grip strength testing complaining of pain."  (AR 291).
18  Dr. To found no evidence of deformities, swelling or tenderness of any
19  joint.  (AR 293).  Dr. To noted that Plaintiff complained of some pain
20  with ranges of motion but found that her "range of motion of all
21  extremities appears normal."  (Id.).  Dr. To also found that there were
22  no "true findings of nerve root irritation" and Plaintiff had normal
23  range of motion in her back.  (AR 293-94).  Dr. To concluded that
24  Plaintiff, with certain environmental limitations, can push, pull, lift
25  and carry fifty pounds occasionally and twenty-five pounds frequently.
26  (AR 294).  Dr. To found no other physical limitations or restrictions.
27  (Id.).

28

7

1    An RFC assessment was conducted for each application.  (AR 94-101,
2  298-305).  On November 17, 2003, Dr. Harris, the State Agency physician,
3  concluded that Plaintiff can lift and carry twenty pounds occasionally
4  and ten pounds frequently.  (AR 95).  Dr. Harris found that Plaintiff
5  can stand, walk and sit for six hours out of an eight-hour workday.
6  (Id.) Other than environmental limitations, the only limitation Dr.
7  Harris found was with regard to Plaintiff's use of her right hand.  (AR
8  97-98).  Dr. Harris concluded that Plaintiff's right hand usage should
9  be limited to occasional grasping and fingering.  (AR 97).

11    On October 5, 2005, another State Agency physician conducted an RFC
12  assessment.[2]  (AR 298-305).  The physician concluded that Plaintiff can
13  lift  and  carry  fifty  pounds  occasionally  and  twenty-five  pounds
14  frequently.  (AR 299).   The physician also found that Plaintiff can
15  stand, walk and sit for six hours out of an eight-hour workday.  (Id.).
16  The State Agency found that Plaintiff should avoid concentrated exposure
17  to fumes, odors, dusts, gases and poor ventilation, but imposed no other
18  limitations.  (AR 302).

20    **C.    Plaintiff's Testimony**

22    At the August, 25, 2004 hearing, Plaintiff testified that she
23  stopped working as a secretary in December 2002.  (AR 325).  Plaintiff
24  testified that she became ill in April 2003 and was diagnosed with
25  sarcoidosis.  (AR 326-27).  She stated that she experienced "[s]hortness

27    [2]  The signature of the State Agency physician who conducted the RFC
28  assessment is illegible.

8

of breath, fatigue, and pain in [her] joints." (AR 327). Plaintiff stated that she could not breathe unless she used her inhalers every six hours. (Id.). Depending on the weather and activity level, Plaintiff may need to use her inhalers more frequently. (AR 328). As of the hearing date, Plaintiff's physicians had not recommended any other treatment for her sarcoidosis. (AR 330-31). Plaintiff also testified that she experienced joint pain when she developed sarcoidosis. (AR 332). Plaintiff testified that her pain was intermittent. (AR 336-37).

Regarding her activity level, Plaintiff testified that she was able to dress and bathe herself, but that she did not do any chores or activities around the house.[3]   (AR 328-29).   Plaintiff watched television, read, and took two to three naps each day.   (AR 329). Plaintiff testified that she could only walk down the stairs to the front door of her house before needing to sit and that she could only stand for ten to fifteen minutes at a time. (AR 331-32). Plaintiff did not shop or socialize. (AR 332, 334). Plaintiff testified that she is not able to travel on her own but that she did drive herself to the doctor's office. (AR 334).

At the August 29, 2006 hearing, Plaintiff testified that after she stopped working as a secretary in 2002, she was a care provider part time in early 2003. (AR 350). Plaintiff testified that as a secretary, she stood for less than two hours a day. (AR 351). Plaintiff's duties

---

[3] In Plaintiff's Daily Activities Questionnaire, Plaintiff stated that she did not do any of the listed chores – shopping cleaning or driving – before she became disabled. (AR 228).

1  included typing, computer work and filing.  (Id.).  Plaintiff testified
2  that she was diagnosed with sarcoidosis.  (AR 351-52).  She regularly
3  used two inhalers for her asthma attacks, had joint pain, and had
4  shortness of breath.  (AR 352, 354).  Plaintiff stated that multiple
5  environmental factors, including air conditioning, heat, body odors and
6  chemical odors, triggered her breathing difficulties.  (AR 354).  As for
7  her joint pain, Plaintiff testified that a rheumatologist diagnosed her
8  with sarcoid arthritis in 2006.  (Id.).

9

10  Regarding her daily activities, Plaintiff stayed home all day.  (AR
11  357).  Plaintiff watched television, read and took a two to three-hour
12  nap daily.  (AR 357, 360).  Plaintiff could sometimes dress and bathe
13  herself.  (AR 360).  She did not do any chores, including cooking or
14  cleaning.  (AR 357, 360).  Although Plaintiff testified that she did not
15  cook she also testified that if she "burn[s] a skillet in the house,"
16  she had to go outside.  (AR 354-55, 357).

17

18  At the January 26, 2009 hearing, Plaintiff testified that her
19  condition was worse than at the prior hearing because she had chronic
20  fatigue.  (AR 386).  Plaintiff testified that she usually woke up
21  "around 11:00 and 12:00" and napped again at 2:00 p.m.  (AR 389).
22  Plaintiff stated that she was still taking the same medications and her
23  pain had "more frequent fluctuating."  (AR 386).  She took the Tylenol
24  her physician prescribed for her pain, but she "usually overdose[d] on
25  it" because it offered her more relief.  (Id.).  Plaintiff experienced
26  difficultly breathing every day and used her inhaler and her sister's
27  nebulizer to help her with her breathing.  (AR 387, 390).  Plaintiff

28

1  stated that her doctor attributed her breathing problems and joint pains
2  to her sarcoidosis.  (AR 391).

3

4      **D.   <u>Vocational Expert's Testimony</u>**

5

6      Freeman Leeth testified at the August 25, 2004 hearing as a
7  vocational expert.  (AR 339-44).  ALJ Hogg posed three hypotheticals to
8  Mr. Leeth.  The first hypothetical was an individual capable of light
9  exertional work requiring a clean work environment but "precluded from
10 frequent handling and fingering with the use of the right upper
11 extremity."  (AR 340).  Following the first hypothetical, Mr. Leeth
12 testified that Plaintiff would be unable to perform her past relevant
13 work but could perform the job of an information clerk.  (AR 340-41).
14 That hypothetical person could not perform the job of an information
15 clerk if she required to be away from her work station for more than
16 five minutes every hour.  (AR 344).  ALJ Hogg presented a second
17 hypothetical of an individual with the same restrictions but at a
18 sedentary level of exertion instead.  (AR 341).  Following the second
19 hypothetical, Mr. Leeth stated that Plaintiff would not be able to
20 perform any sedentary jobs.  (<u>Id.</u>).  Finally, ALJ Hogg presented a
21 hypothetical person with a light exertion level limited to occasional
22 handling, fingering and gripping for both upper extremities and
23 requiring a clean environment.  (<u>Id.</u>).  Following the last hypothetical,
24 Mr. Leeth testified that Plaintiff could perform the job of a
25 surveillance systems monitor.  (AR 341-42).

26

27     Lynne Tracy testified at the August 29, 2006 hearing as a
28 vocational expert.  (AR 362-65).  ALJ Garwal posed two hypotheticals.

First, ALJ Garwal presented a right-handed individual who can lift twenty pounds occasionally and ten pounds frequently, stand and sit for six hours out of an eight-hour workday, occasionally climb, bend and stoop, and occasionally do right hand fingering, gripping and handling. (AR 362). Such person must also avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation. (AR 362-63). Following this hypothetical, Ms. Tracy testified that Plaintiff could not perform her past relevant work due to the upper extremity limitations. (AR 363). Such person, however, could perform the job of an information clerk. (Id.). Ms. Tracy stated that there were a thousand of these positions regionally. (Id.). Second, ALJ Garwal presented an individual who can lift ten pounds occasionally and five pounds frequently, can stand for two hours in an eight-hour work day, can sit for six hours in an eight-hour workday, and requires a clean environment. (AR 363-64). Following the second hypothetical, Ms. Tracy testified that based on the Dictionary of Occupational Titles ("DOT") and Occupational Outlook Handbook, such an individual could perform Plaintiff's past relevant work. (AR 364). Ms. Tracy stated that Plaintiff's description of her past work differed from the DOT classification in that the DOT classified a school secretary at a sedentary exertion level, but Plaintiff's testimony indicated that her past relevant work was sometimes performed at a light level. (Id.).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him

12

from engaging in substantial gainful activity[4] and that is expected to result in death or to last for a continuous period of at least twelve months. <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).   The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)   Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled. If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")? If so, the claimant is found disabled. If not, proceed to step four.

---

[4]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

    (4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

    (5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098-99); 20 C.F.R. §§ 404.1520(b) - 404.1520(g)(1), 416.920(b) - 416.920(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett, 180 F.3d at 1098).  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity,[5] age, education, and work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").

---

    [5]   Residual functional capacity is what one "can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

1  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett,
2  180 F.3d at 1100-01).  When a claimant has both exertional (strength-
3  related) and nonexertional limitations, the Grids are inapplicable and
4  the ALJ must take the testimony of a vocational expert.  Moore v. Apfel,
5  216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d
6  1335, 1340 (9th Cir. 1988)).

7
8                          **THE ALJ'S DECISION**
9
10      The ALJ found that Plaintiff was not disabled within the meaning of
11  the Social Security Act.  (AR 379-80).  The ALJ found that res judicata
12  applied to the "period between April 1, 2003, the alleged disability
13  onset date, and December 2, 2004, the previous final decision of the
14  [Agency], because the previous application involved the same party, same
15  facts, and same issues."  (AR 372).  As such, the ALJ applied the five-
16  step sequential evaluation process to the period from December 2, 2004
17  through the date of the decision, for which there was a rebuttable
18  presumption of nondisability.  (Id.).

19
20      At the first step of the evaluation process, the ALJ observed that
21  Plaintiff had not engaged in substantial gainful activity since April 1,
22  2003, the alleged disability onset date.  (AR 374).  At step two, the
23  ALJ found that Plaintiff's asthma and sarcoidosis were severe
24  impairments.  (AR 374-75).  At step three, the ALJ concluded that
25  Plaintiff's severe impairments, whether individually or in combination,
26  did not meet or equal any of the Listings.  (AR 376).  After considering
27  Plaintiff's symptoms and her medical records, the ALJ concluded that
28  Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§

1  404.1576(b)  and  416.967(b)  with  environmental  limitations.   (AR 376,
2  378).  At step four, the ALJ found that Plaintiff could perform her past
3  relevant work.  (AR 378-79).  Consequently, the ALJ found that Plaintiff
4  was not disabled within the meaning of the Act since the alleged onset
5  date.  (AR 379-80).

6

7                            **STANDARD OF REVIEW**

8

9       Under  42  U.S.C.  §  405(g),  a  district  court  may  review  the
10 Commissioner's decision to deny benefits.  The court may set aside the
11 Commissioner's decision when the ALJ's findings are based on legal error
12 or are not supported by substantial evidence in the record as a whole.
13 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing
14 Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th
15 Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

16

17      "Substantial evidence is more than a scintilla, but less than a
18 preponderance."  Reddick, 157 F.3d at 720 (citing Jamerson v. Chater,
19 112 F.3d 1064, 1066 (9th Cir. 1997)).  It is "relevant evidence which a
20 reasonable person might accept as adequate to support a conclusion."
21 Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279).  To
22 determine whether substantial evidence supports a finding, the court
23 must "'consider the record as a whole, weighing both evidence that
24 supports  and  evidence  that  detracts  from  the  [Commissioner's]
25 conclusion.'"  Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2
26 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support
27 either  affirming  or  reversing  that  conclusion,  the  court  may  not

28

                                  16

1 substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d

2 at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

3

4                                **DISCUSSION**

5

6     Plaintiff contends that: (1) the ALJ erred when it determined that

7 res judicata applied to Plaintiff's application and that Plaintiff did

8 not rebut the presumption of nondisability; (2) the ALJ erred when it

9 failed to provide clear and convincing reasons for rejecting Plaintiff's

10 testimony; and (3) the ALJ erred by finding that Plaintiff could return

11 to her past relevant work.  (JS at 5-25).  The Court disagrees with

12 Plaintiff's contentions.

13

14     **A.    The ALJ Correctly Applied Res Judicata To Plaintiff's**

15          **Application**

16

17     Plaintiff contends that the ALJ incorrectly determined that her

18 application was governed by Chavez.  (JS at 6).  Plaintiff argues that

19 she "has shown a worsening of her condition" and the ALJ "improperly

20 evaluated the medical evidence, [her] testimony and her ability to

21 return to her work as a secretary and work on a sustained basis."  (JS

22 at 6, 8).  The Court disagrees.

23

24     When a claimant reapplies for benefits, prior findings of

25 nondisability create a presumption of continuing nondisability.

26 Plaintiff may overcome this presumption, however, by showing that

27 circumstances have changed since her last denial, indicating a greater

28 disability.  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (citing

                                   17

1  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)); see also Lester
2  v. Chater, 81 F.3d 821, 827 (9th Cir. 1996) (as amended) (explaining
3  that a change in circumstances may override a presumption of
4  nondisability).  Changed circumstances that may preclude res judicata
5  include "[a]n increase in severity of the claimant's impairment," a
6  change in the claimant's age category as defined by the Grids and the
7  existence of a new impairment.  Lester, 81 F.3d at 827.  A plaintiff may
8  then demonstrate that new conditions warrant reconsideration of her
9  application.

10

11      Here, the ALJ correctly found that Chavez applies and that
12  Plaintiff failed to rebut the presumption of nondisability.  Substantial
13  evidence supports the ALJ's finding that Plaintiff's condition has not
14  worsened.

15

16      As discussed supra, prior to the current application, on August 19,
17  2003, Plaintiff filed an application for a period of disability,
18  disability insurance benefits and SSI benefits.  (AR 166).  The prior
19  application was based on the same impairments alleged in the current
20  application, asthma and sarcoidosis.  (AR 167, 202).  Plaintiff alleged
21  the same symptoms arising from her impairments as alleged in the current
22  application.  (AR 169).  During the hearing, Plaintiff testified that
23  she had "shortness of breath, fatigue, [and] pain in [her] joints."  (AR
24  327).  She stated that she had to use her inhalers every six hours, took
25  two to three naps a day, and had inflammation of the joints.  (AR 327,
26  329, 332).  Plaintiff testified that her joint pain in her fingers was
27  intermittent, but that she experienced daily pain.  (AR 337-38).
28  Plaintiff's medical records indicate that Plaintiff was diagnosed with

sarcoidosis in 2003 and reported these symptoms during her treatments. (See, e.g., AR 107, 263, 265). Following Plaintiff's request for Appeal's Council review, the Agency found Plaintiff not disabled and denied her application. (AR 173). Plaintiff did not appeal that final decision. (AR 370).

Plaintiff listed the same symptoms when she reapplied for benefits in 2005. (AR 202). In her application, she stated that she had "difficultly breathing" and "pain in the joints." (Id.). Almost identical to her prior testimony, Plaintiff testified at the 2006 and 2009 hearings that she had shortness of breath every day, chronic joint pain and chronic fatigue. (AR 354, 359, 386). The ALJ noted that Plaintiff's application "involved the same party, same facts, and same issues which had become administratively final as of December 2, 2004." (AR 372). As such, ALJ applied Chavez, limited his examination to the period from December 2, 2004, the date of the prior decision, to the date of his decision, i.e., June 15, 2009. (AR 380).

As Plaintiff did not allege any new impairments and there was no change in her age category, she had the burden to show that her impairments increased in severity in order to rebut the presumption of nondisability. Lester, 81 F.3d at 827. Plaintiff argues that the additional medical records she provided show that she suffers from pulmonary problems, fatigue and pain associated with sarcoidosis and that these records indicate a "worsening of her condition." (JS at 6-8). The ALJ evaluated the medical records in detail and determined, however, that these are the same symptoms Plaintiff alleged in her prior application and that there was "no evidence that [her] impairments have

19

worsened." (AR 374-75, 377-78). As such, substantial evidence supports the ALJ's finding that Plaintiff failed to establish a changed circumstance. (AR 378).

Accordingly, the ALJ correctly applied <u>res judicata</u> to Plaintiff's application and found that Plaintiff failed to rebut the presumption of nondisability.

B.   **The ALJ Provided Clear And Convincing Reasons For Rejecting Plaintiff's Testimony**

Plaintiff contends that the ALJ erred failed to properly consider her testimony. (JS at 9). Specifically, Plaintiff argues that the ALJ failed to "articulate an acceptable reason" for rejecting Plaintiff's testimony and rejected her testimony "in order to support a denial decision." (JS at 10, 13).

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'" <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant, however, "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'"   <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1282).   Second, if the

claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Smolen, 80 F.3d at 1281.

The ALJ may consider the following factors when weighing the claimant's credibility: (1) her reputation for truthfulness; (2) inconsistencies either in her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains.  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

The Court initially remanded the ALJ's decision, dated October 26, 2006, on the basis that the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's pain testimony.  (AR 413-17).  In that decision, the ALJ articulated only one reason for rejecting Plaintiff's credibility – a lack of objective medical evidence.  (AR 20, 415).

Upon remand, the ALJ reviewed further medical records and conducted an additional hearing.  (AR 383-95, 491-518).  Following the remand, the ALJ did not err in finding Plaintiff not credible.  In the first step of the credibility analysis, the ALJ properly considered the medical evidence to determine that "the impairments could reasonably be expected to cause the alleged symptoms."  (AR 377).  At the second step, the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony and finding her statements "concerning the intensity,

21

persistence and limiting effects of these symptoms" not entirely credible. (Id.).

The ALJ relied on Plaintiff's lack of treatment, the inconsistencies between Plaintiff's testimony and the medical evidence and her physicians' statements as grounds for finding Plaintiff's testimony concerning the intensity and severity of her pain not entirely credible.[6]  In reaching his credibility finding, the ALJ examined and discussed the Dr. To's medical findings and King/Drew Medical Center records.  (AR 375, 377).   It was proper for the ALJ to consider the opinions of physicians in weighing Plaintiff's credibility. See Thomas, 278 F.3d at 958-59.  See also Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (stating that while the ALJ cannot reject subjective testimony solely because "it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the [impairment] and its disabling effects").

First, the ALJ reviewed Plaintiff's treatment history and pointed to the infrequency of Plaintiff's treatment, noting that "her treatment

---

[6]  The Court notes that there are also aspects of Plaintiff's daily activities testimony that undermined her credibility.  For example, Plaintiff twice testified that she did not cook.  (AR 357, 452).  Plaintiff, however, also testified that odors affected her ability to breathe, such as when "[she] burn[s] a skillet in the house." (AR 449).  Another inconsistency is Plaintiff's testimony concerning her ability to travel.  Plaintiff stated that she cannot travel on her own, but then acknowledged that she drove herself to the doctor's office.  (AR 334).  Further, although Plaintiff testified that she did not do any chores, she stated in her Daily Activities Questionnaire that she did not perform those chores prior to becoming disabled.  (AR 228, 357).

1  has been intermittent at best" and the medical records do not evidence
2  the "need for regular medically supervised treatment."[7]   (AR 377).  <u>See</u>
3  <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (stating that the
4  "ALJ is permitted to consider lack of treatment in his credibility
5  determination").  <u>See also</u> <u>Parra v. Astrue</u>, 481 F.3d 742, 751 (9th Cir.
6  2007) (noting that evidence of "conservative treatment" is a clear and
7  convincing reason to reject a claimant's testimony).  Plaintiff has few
8  medical records from 2006 forward, indicating fewer than ten visits to
9  the doctor over a three-year period.  (AR 375).  The ALJ found that this
10 lack of consistent treatment suggests a lesser "degree of disability"
11 than Plaintiff alleges.  (AR 377).

12

13     Second, the ALJ noted the inconsistencies between Plaintiff's
14 testimony and the objective medical evidence.  Plaintiff argues that her
15 condition worsened.  (JS at 8).  Plaintiff's most recent pulmonary
16 function test on August 26, 2008, however, was normal.  (AR 504).  Dr.
17 To, the consultative examiner, also did not find significant respiratory
18 problems.  (AR 292).  Regarding her joint pain, Plaintiff's treating
19 physicians found that she had full range of motion in her joints, (AR
20 491, 498), and no swelling, tenderness or redness on her joints on her
21 more recent visits.  (AR 498, 517).  Dr. To also made the same findings
22 during his examination.  (AR 293).  In addition, Dr. To found that
23 Plaintiff "put forth poor effort" on her grip strength test and that

24

_____

25     [7]   The Court notes there is further evidence not cited by the ALJ
26 that supports his finding of Plaintiff's lack of consistent treatment.
   Although physicians at King/Drew Medical Center referred her to a
27 rheumatology clinic on multiple occasions from 2005-2007, the medical
   records only indicate one visit to a rheumatology clinic.  (AR 312, 491,
28 498, 517).

although Plaintiff complained of back pain, there were not findings of nerve root irritation and Plaintiff had normal range of motion.  (AR 291, 294).

Finally, the ALJ noted that "no treating or examining source has assessed [Plaintiff] with functional limitations to the degree she alleges."[8]  (AR 378).  Plaintiff's medical records do not evidence any doctor placing any restrictions on her with regard to walking, standing, sitting, lifting or carrying.  (Id.).  Further, Dr. To and the State Agency physician both concluded that Plaintiff was capable of a medium level of exertion and that she did not require any upper extremity restrictions.  (AR 294, 299, 301).

As such, the ALJ's interpretation of Plaintiff's testimony is reasonable and he provided clear and convincing reasons for rejecting Plaintiff's testimony.

C.   **The ALJ Properly Found That Plaintiff Could Return To Her Past Relevant Work**

Plaintiff contends that the ALJ erred when he found her capable of returning to her past relevant work as a school secretary.  (JS at 19). Specifically, Plaintiff argues that the ALJ had the burden to show that Plaintiff is able to perform past relevant work and failed to "determine the demand[s] of her past work and compare those demands to her mental

_____

[8]   Although the ALJ requested that Plaintiff submit an RFC assessment from her primary physician, the record does not contain such an assessment.  (AR 392).

24

1  and physical capabilities." (JS at 19, 21). The Court disagrees with
2  Plaintiff's contention.

4  At step four of the evaluation process, the claimant has the burden
5  of proving that she is unable return to her past relevant work.
6  Bustamante, 262 F.3d at 953 (citing Tackett, 180 F.3d at 1098); Pinto
7  v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). "Although the burden
8  of proof lies with the claimant at step four, the ALJ still has a duty
9  to make the requisite factual findings to support his conclusion."
10 Pinto, 249 F.3d at 844. The ALJ performs this duty by comparing the
11 claimant's RFC to the physical and mental demands of the claimant's past
12 relevant work. Id. at 844-45; 20 C.F.R. §§ 404.1520(f), 416.920(f). To
13 determine the general demands of the claimant's past relevant work, the
14 ALJ should refer to the Dictionary of Occupational Titles ("DOT"). Id.
15 at 845 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).
16 The ALJ should rely on a vocational expert and the claimant's testimony
17 to determine the actual demands of the claimant's past relevant work.
18 Id. at 844.

20 Here, the ALJ made the requisite findings. The ALJ first
21 determined that, based on all of the evidence, Plaintiff had the RFC to
22 perform light work with some environmental restrictions.[9] (AR 376-78).
23 The ALJ then properly relied on the vocational expert, who incorporated
24 Plaintiff's testimony and the DOT, to determine the physical and mental

26  [9]  The ALJ noted that he gave Plaintiff "some benefit of the doubt"
27 in finding an RFC of light work. (AR 378). Both the consulting
   examiner and State Agency physician found Plaintiff capable of
28 performing **medium** work. (Id.).

25

demands of Plaintiff's past work as a school secretary.  The vocational expert, Ms. Tracy, testified that under the DOT, a school secretary is classified at a sedentary exertional level.  (AR 364).  Ms. Tracy further testified that the position if performed as Plaintiff described would sometimes require a light exertion level.  (Id.).  In response to the ALJ's hypothetical of an individual with a sedentary exertion level and environmental limitations, Ms. Tracy stated that such an individual could perform Plaintiff's past relevant work.  (AR 363-64). Accordingly, based on these findings, the ALJ properly found that Plaintiff, whose RFC he assessed as light work, is capable of performing her past relevant work.  (AR 378-79).

The Court notes that in the prior application, ALJ Hogg found unable to return to her past relevant work.  (AR 172).  After evaluating Plaintiff's testimony and the medical evidence available to him at the time, ALJ Hogg found that the "evidence [did] not fully support [Plaintiff's] allegations" concerning her pain and limitations.  (AR 170).  In contrast to ALJ Garwal, however, ALJ Hogg found that Plaintiff had the RFC "to perform light work that requires only occasional fingering, gripping, and handling with the right upper extremity and does not require exposure to dust, smoke or fumes."  (AR 170).  ALJ Hogg relied on the consultative examiner and State Agency physician, who reached different conclusions than Dr. To and the other State Agency physician, to reach his RFC determination.  (AR 88, 95, 97). Nevertheless, ALJ Hogg also concluded that Plaintiff was not disabled because she had the RFC to perform other work.  (AR 173).

26

1    Thus, even if ALJ Garwal erred when he found Plaintiff able to

2 return to her past relevant work, such error is harmless.  See Burch,

3 400 F.3d at 679 ("A decision of the ALJ will not be reversed for errors

4 that are harmless.").  Both the vocational expert in the prior and

5 current applications testified that there were other jobs that Plaintiff

6 was capable of performing, whether at a light exertion level with

7 limitations to her upper extremity or at a sedentary level.  (AR 340-42,

8 363).  Regardless of whether Plaintiff's RFC should have included the

9 upper extremity limitation, Plaintiff would be found not disabled.

10 Accordingly, if ALJ Garwal erred, such error is harmless.

11

12                              **CONCLUSION**

13

14    Consistent with the foregoing, IT IS ORDERED that the decision of

15 the Commissioner is AFFIRMED.  IT IS FURTHER ORDERED that the Clerk of

16 the Court serve copies of this Order and the Judgment herein on

17 counsel for both parties.

18

19

20 DATED:  May  10, 2010.              _____/s/_____
                                      SUZANNE H. SEGAL
21                                    UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

                                    27